An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1346
NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

IN THE MATTER OF:

                                  Buncombe County
                                  No. 11 JA 110

J.W.

Appeal by respondent from order entered 16 September 2013 by Judge Andrea F. Dray in Buncombe County District Court. Heard in the Court of Appeals 7 April 2014.

*Hanna Frost Honeycutt for petitioner-appellee Buncombe County Department of Social Services.*

*Rebekah W. Davis for respondent-appellant mother.*

*Winston & Strawn LLP, by Eric M.D. Zion, for guardian ad litem.*

McCULLOUGH, Judge.

Respondent, the mother of the juvenile, appeals from an order ceasing reunification efforts and establishing guardianship of the juvenile. After careful review, we affirm.

## I. Background

On 21 April 2011, the Buncombe County Department of Social Services ("DSS") filed a petition alleging that J.W. was a

neglected and dependent juvenile. DSS stated that it received a report of neglect on 11 February 2011 alleging that:

> [R]espondent mother went to the home of [V.T.], the father of the half-sibling of the minor child, numerous times and got into verbal altercations, and then rammed [V.T.'s] car with her two minor children in the vehicle causing damage to both cars. The respondent mother was arrested and taken to jail, and the criminal charges are pending.

J.W. was placed in foster care. Then, on 8 April 2011, respondent had a "mental health breakdown," was charged with reckless driving, speeding, and running red lights, and was committed to a hospital for mental health services.

DSS further alleged that respondent had "extensive, long-term mental health issues" and could not provide proper care for J.W. DSS additionally alleged that respondent could not care for J.W. until the criminal charges against her were resolved. DSS noted that J.W.'s putative father had shown no interest in providing care for J.W. DSS obtained non-secure custody of the juvenile. On 6 October 2011, J.W. was adjudicated neglected and dependent based on stipulations by respondent to the allegations in the petition.

On 3 January 2012, the trial court entered a permanency planning and review order in which it ordered that custody

remain with DSS, but granted respondent unsupervised visitation. The court set the permanent plan for the juvenile as reunification. On 13 March 2012, the trial court ordered that J.W. begin overnight, unsupervised visitation with respondent.

In April 2012, an in-home trial placement began in which J.W. resided with respondent. During this placement, J.W. was burned by a barbecue grill after respondent left the child outside and unsupervised. Also, J.W.'s half-sibling was left alone in the bathroom and used respondent's razor to shave off part of his eyebrow. Additionally, respondent threatened her Assertive Community Treatment Team ("ACTT"), refused to have contact with some members, and threatened to murder a social worker. Respondent also told DSS to take her children if they thought they could do a better job of parenting.

The trial placement was terminated on 20 August 2012. When the social worker arrived at the home to remove J.W., respondent cursed and threated DSS staff in the presence of the juvenile, and law enforcement was called in order to "keep the respondent mother at bay." On 11 January 2013, *nunc pro tunc* 16 October 2012, the trial court entered a permanency planning and review order in which it changed the permanent plan for the juvenile to

guardianship and ceased reunification efforts. Respondent gave notice to preserve her right to appeal.

On 16 September 2013, the trial court entered a permanency planning review order in which it awarded guardianship of J.W. to his foster parents. The court granted respondent visitation rights. Respondent filed timely notice of appeal from the trial court's order.

## II. Discussion

In her first argument on appeal, respondent challenges the trial court's cessation of reunification efforts in its 16 October 2012 permanency planning order. However, because respondent has not properly preserved this issue for appeal, we decline to review her argument.

Pursuant to N.C. Gen. Stat. § 7B-507(c), "[a]t any hearing at which the court orders that reunification efforts shall cease, the affected parent, guardian, or custodian may give notice to preserve the right to appeal that order in accordance with G.S. 7B-1001." N.C. Gen. Stat. § 7B-507(c) (2013). Furthermore, such an order may be appealed only if it is "properly preserved" in accordance with N.C. Gen. Stat. § 7B-1001(a)(5). N.C. Gen. Stat. § 7B-1001 permits a parent "to appeal the order [ceasing reunification efforts] if no

termination of parental rights petition or motion is filed within 180 days of the order." N.C. Gen. Stat. § 7B-1001(a)(5)(b) (2013). N.C. Gen. Stat. § 7B-1001 further provides that "[n]otice of appeal and notice to preserve the right to appeal shall be given in writing by a proper party as defined in G.S. 7B-1002 and shall be made within 30 days after entry and service of the order in accordance with G.S. 1A-1, Rule 58." N.C. Gen. Stat. § 7B-1001(b) (2013).

Here, respondent properly gave notice to preserve her right to appeal the 16 October 2012 permanency planning order which ceased reunification efforts. Pursuant to N.C. Gen. Stat. § 7B-1001(a)(5)(b), respondent had a right to appeal the order when 180 days passed and no petition or motion to terminate parental rights was filed. Respondent, however, failed to give notice of appeal when the 180 days had passed and her right to appeal the permanency planning order had vested. Accordingly, we decline to review respondent's arguments concerning whether the trial court erred by ceasing reunification efforts. *See In re B.P.*, 169 N.C. App 728, 732, 612 S.E.2d 328, 331 (2005) (this Court is bound by findings of fact and conclusions of law set forth in permanency planning review orders where respondent had the

ability to appeal from those orders, but did not avail herself of that opportunity).

We next consider respondent's argument that the trial court abused its discretion when it awarded guardianship to the juvenile's foster parents.

Pursuant to N.C. Gen. Stat. § 7B-907(c), at the conclusion of a permanency planning hearing, "the judge shall make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(c) (2011).[1] "[W]hen the court finds it would be in the best interests of the juvenile, the court may appoint a guardian of the person for the juvenile." N.C. Gen. Stat. § 7B-600(a) (2013). "We review a trial court's determination as to the best interest of the child for an abuse of discretion." *In re D.S.A.*, 181 N.C. App. 715, 720, 641 S.E.2d 18, 22 (2007).

Here, the trial court found in the permanency planning order that placing the juvenile in guardianship with his foster parents was in his best interests. In support of its award of

---

[1]Portions of the Juvenile Code were repealed or amended by S.L. 2013-129, effective 1 October 2013. However, because the order appealed was entered 16 September 2013, prior to the effective date of the changes, we cite to the version of the statutes effective at that time.

guardianship, the trial court found as fact that the juvenile had spent most of his life in his foster home, and he had a close bond with his foster sister and both foster parents. The juvenile's medical and dental needs were being met. Furthermore, the trial court found that "a referral was made for play therapy" for the juvenile, but he was "declined for services because he had no need for therapy. The therapist reported that the minor child is stable and there is no need for therapeutic intervention." The trial court also found that the foster parents understood the full implications of being named guardians and had adequate resources to care for J.W. Respondent, on the other hand, was diagnosed with post-traumatic stress disorder and bipolar disorder. The court found that while respondent had shown improvement, she still required ACTT services, which "are one step down from hospitalization." Respondent was also unemployed. Based on the evidence and findings of fact, we conclude the trial court did not abuse its discretion when it granted guardianship of J.W. to his foster parents.

We lastly consider respondent's argument that the trial court's visitation order was erroneous. N.C. Gen. Stat. § 7B-905(c) provides that any dispositional order which leaves the

minor child in a placement "outside the home shall provide for appropriate visitation as may be in the best interests of the juvenile and consistent with the juvenile's health and safety." N.C. Gen. Stat. § 7B-905(c) (2011). This Court has stated that:

> In the absence of findings that the parent has forfeited their right to visitation or that it is in the child's best interest to deny visitation "the court should safeguard the parent's visitation rights by a provision in the order defining and establishing the time, place[,] and conditions under which such visitation rights may be exercised."

*In re E.C.*, 174 N.C. App. 517, 522-23, 621 S.E.2d 647, 652 (2005) (quoting *In re Stancil*, 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971)).

Here, the trial court's order provided that respondent "shall have two hours of visitation with the minor child supervised by [DSS] every week on Friday from 9:00 AM to 11:00 AM." Respondent contends that the limitation on visitation was unduly restrictive and not based in reason. We disagree. In light of respondent's history of mental health issues, as well as the recent history of disrupted trial placements, we conclude the trial court did not abuse its discretion in restricting visitation to weekly supervised visits.

Respondent further claims that the trial court's order was not sufficiently specific because it failed to identify a location for visitation. We disagree. The trial court specifically adopted the recommendations of DSS in regards to visitation, which included the recommendation that visitation should take place at the Family Visitation Center. Thus, we conclude that the order in this case does contain the "minimum outline" required by *E.C.* Accordingly, we affirm the trial court's order.

Affirmed.

Judges HUNTER, Robert C., and GEER concur.

Report per Rule 30(e).